Chief Judge Breitel.
The People appeal from orders of the Appellate Division which reversed, on the law alone, defendants’ joint convictions, after trial without jury, of robbery in the first degree and burglary in the first degree, and remanded the cases for new trials.
The issue is one of harmless error. At trial, evidence obtained during an unlawful search was improperly admitted. But, also at trial, defendants, and two others also convicted but not before this court, were implicated by the victim’s compelling and convincing testimony, testimony completely independent of and not tainted by the unlawful search. The question is whether the trial court’s error, concededly of constitutional dimension, required reversal as a matter of law of convictions so supported by admissible, reliable, eyewitness testimony that the addition of the tainted evidence would be, at best, of negligible significance.
The order of the Appellate Division should be reversed, and the matters remitted to the Appellate Division for a review of the facts. Even constitutional error may be harmless when, as in this case, it is clear, beyond a reasonable doubt, that the error did not contribute to defendants’ conviction (Chapman v California, 386 US 18, 23-24).
The material facts were not contradicted. On December 3, 1973, at about 8:30 p.m., defendants Almestica and Calderon, along with two codefendants, entered the apartment of the victim, Harry Edwards. Defendants were armed with a pistol, a rifle, and a machete. They threatened Edwards, and even made a small cut on his throat with the machete. The cut left a scar visible at the trial more than one year later. After tieing him to a chair, the culprits asked the victim where he kept his money, and assured him that if he co-operated, he *225 would not be hurt. Then, after rummaging through the apartment, they took what they wanted, gagged the victim, and left.
Edwards testified in detail and his testimony was uncontradicted. The fact of robbery was, to some degree, corroborated by the testimony of George Maisonave, who found Edwards bound in his apartment a short while later.
Moreover, Edwards positively identified all four defendants on trial as the perpetrators. Indeed, he knew two of the four culprits, including defendant Almestica, before the crime had been committed. None of the four defendants at the trial testified. The case was, therefore, all but conclusive.
Two questions concerning Edwards’ testimony, neither of them significant, are raised. The first involves defendants’ method of entry. Edwards testified to a forcible entry. On his cross-examination defense counsel, however, sought to establish that the entry was consensual, emphasizing the victim’s prior acquaintance with two of the culprits on trial. Although Edwards never retreated from his direct testimony, the mode of entry is immaterial, as the Trial Judge noted, because all of the elements of the crimes charged, however the entry, were satisfied by the robbers’ subsequent behavior.
The second question raised involves the victim’s inability, on cross-examination, to identify positively which robber performed particular acts during the ordeal. Edwards, in admitting his present difficulty, steadfastly maintained the accuracy of his prior, precise identification of the role of each defendant, made to the police shortly after the events occurred, more than a year before the trial. This past recollection recorded suffices to remove any doubt as to the "identification” testimony (see Richardson, Evidence [10th ed], §§ 469-473).
The principal issue in the case arises not from Edwards’ testimony, but from the improper admission of testimony by a police officer who, later on the night in question, had stopped, and then searched, a suspicious "gypsy” taxicab, only to find the four culprits, the contraband and loot, and the weapons used in the Edwards’ robbery. At a pretrial hearing, a motion to suppress this evidence was denied, and the evidence was admitted at trial.
Under People v Ingle (36 NY2d 413, 414-415), and People v Simone (39 NY2d 818), both decided after the trial in this case, the taxicab search, made only on a "hunch”, was unlaw *226 ful. On separate appeals, the Appellate Division, relying on the now conceded unlawfulness of the search, reversed defendants’ convictions on the law alone, and remanded the cases for new trials.
On appeal, the People contend that the constitutional error was harmless. The Supreme Court has said that Federal constitutional error in a criminal case may be harmless only if it is "harmless beyond a reasonable doubt”, that is, if there is no reasonable possibility that the erroneously admitted evidence contributed to the conviction (Chapman v California, 386 US 18, 22-24, supra; see Fahy v Connecticut, 375 US 85, 86). The test is concededly stricter than the one applied to nonconstitutional error in New York (People v Crimmins, 36 NY2d 230, 242). The very fact that a test has been articulated, however, implies necessarily that in some cases Federal constitutional error may be harmless (Harrington v California, 395 US 250, 254; cf. People v Ramos, 40 NY2d 610, 618-619).
This is such a case. The cogent testimony of Edwards, the crime victim, who knew and recognized two of the culprits, is, by itself, uncontradicted and all but conclusive. The able and experienced Trial Judge explicitly credited Edwards’ testimony, and noted the extensive corroboration by the witness Maisonave who discovered Edwards tied up. One of the robbers, Rodriguez, made an admission to Edwards after the arrest but, arguably, this may be attributed to the unlawful search and seizure. Hence, for the purpose of this case, in view of the other evidence it may be disregarded.
Defendants note that, in giving his oral decision, the Trial Judge made extensive use of the improperly admitted testimony. Of course he did. Any knowledgeable Judge, presented with additional conclusive evidence, apparently admissible under the then prevalent automobile stop rule, would have done as much (see, e.g., People v Rowell, 27 NY2d 691). Such use does not, however, preclude application of the harmless error doctrine. So long as there is no reasonable possibility that admission of the evidence contributed to the conviction, and there is none in this case, the error was harmless and the conviction should not be nullified as a matter of law.
Crucial is that Edwards’ testimony was entirely independent of the unlawful search. If Edwards’ knowledge of the crime or ability to identify defendants had been based on the results of a prior unlawful search, it would be more difficult to find the error harmless. Even where the unlawful actions of the police *227 lead to a live and willing witness, the testimony of the witness may not be gagged by an exclusionary rule (People v Mendez, 28 NY2d 94, esp pp 100-101, cert den 404 US 911). But here, a fortiori, where Edwards was the victim of the crime, and hence where his knowledge of and willingness to testify about defendants’ criminal activity preceded the unlawful search, the taint does not project backwards.
Thus, the case is distinguishable from Fahy v Connecticut (375 US 85, supra). There defendant had confessed to the crime charged after being advised that the police had recovered the paint and brush used in commission of the crime. Both the illegally seized evidence and the confession were admitted at trial, and defendant was convicted. The Supreme Court reversed the conviction, despite defendants’ full confession, noting that the confession may have been induced by the illegally seized evidence (id., pp 90-91; but cf. dissenting opn per Harlan, J., pp 92-94). Thus, that confession was not a source of evidence entirely independent of the taint, and the error in admitting the illegally seized evidence was not harmless. Without the confession and without the paint and brush the remaining evidence was circumstantial only and insufficient by any standard applicable to proof of criminal liability by circumstantial evidence alone (People v Cleague, 22 NY2d 363, 365-366).
Accordingly, the orders of the Appellate Division should be reversed, and the matters remitted to the Appellate Division for a review of the facts.
Cooke, J. (dissenting).